# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

DARRYL A. PHELPS,

                              Plaintiff,

                                                DECISION and ORDER

-vs-

                                                94-CV-7543-CJS

N. KAPNOLAS, *et al.*

                              Defendants.

_____

## APPEARANCES

For Plaintiff:                    Jason L. Coles, Esq.
                                     Adair, Kaul, Murphy, Axelrod & Santoro, LLP
                                     300 Linden Oaks Suite 220
                                     Rochester, NY 14625-2883

For Defendants:                Charles D. Steinman, A.A.G.
                                       New York State Attorney General's Office
                                     144 Exchange Boulevard, Suite 200
                                     Rochester, New York   14614

## I. INTRODUCTION

**SIRAGUSA, J.**  Before the Court in this prisoner civil rights case is defendants' motion (# 116) for summary judgment. Defendants assert they are entitled to judgment on the basis uncontested proof establishes none of them was personally involved in the alleged violation of plaintiff's Eighth Amendment rights, or, in the alternative, that they are entitled to qualified immunity. For the reasons stated below, defendants' motion is granted.

## II. BACKGROUND

### A.   Procedural History

Plaintiff commenced this action in July 1994 asserting, pursuant to 42 U.S.C. § 1983, entitlement to a declaratory judgment and monetary relief for acts of the defendants which he claimed violated his rights under the Fourth, Eighth and Fourteenth Amendments. In a Decision and Order entered on December 22, 1994, by the Honorable Richard J. Arcara, U.S. District Judge, the Court dismissed the complaint as to all the defendants except Kapnolas and all causes of action, except plaintiff's Eighth Amendment claim against Kapnolas. Decision and Order, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS (W.D.N.Y. Dec. 22, 1994). That remaining cause of action was subsequently dismissed based upon defendant's motion for summary judgment. Decision and Order, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS (W.D.N.Y. Jan. 29, 1996). However, plaintiff appealed to the United States Court of Appeals for the Second Circuit, raising the sole issue of whether the allegation that he was placed on a diet consisting only of bread for seven days would support a claim that defendants violated his rights under the Eighth Amendment. Plaintiff prevailed, and the Court of Appeals reversed as to all defendants on that single claim, and remanded for discovery proceedings. *Phelps v. Kapnolas*, 123 F.3d 91, 93 (2d Cir. 1997).

Plaintiff then filed an amended complaint (# 47), which the Court again dismissed, adopting the report and recommendation of U.S. Magistrate Judge Leslie G. Fochio, that defendants' motion (# 49) for summary judgment be granted. Order Adopting Report and Recommendation, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS (W.D.N.Y. Dec. 8, 2000). Plaintiff appealed that dismissal, and the Court of Appeals reversed, reinstated the complaint, and remanded the case to the Court for further discovery. *Phelps v. Kapnolas*,

308 F.3d 180 (2d Cir. 2002). Discovery now having been completed, defendants have filed another motion (# 116) for summary judgment, which is now before the Court. Plaintiff's *pro bono* counsel filed responsive papers and the Court heard oral argument on the motion on February 17, 2005.

### B.    Factual Background

Viewing the evidence in the light most favorable to plaintiff and drawing every inference in his favor, the Court accepts the following facts for the purposes of this motion. Plaintiff was an inmate at the Southport Correctional Facility ("Southport"), which is operated by the New York State Department of Correctional Services ("DOCS") (Amended Complaint, ¶ 3). Defendants were employed by DOCS in the following capacities at the times of the incidents alleged in the complaint: (1) Nick Kapnolas as a Correction Officer (Kapnolas Dep. at 10); JoAnn Delaney[1] as Institutional Steward (Delaney Aff. ¶ 11); Robert McClellan as Superintendent (McClellan Aff. ¶ 1); Terry Cleveland as a Correction Sergeant (Cleveland Dep. at 5); and Michael McGinnis as Deputy Superintendent of Security (McGinnis Aff. ¶ 1).

On July 1, 1994, Kapnolas filed an Inmate Misbehavior Report alleging that plaintiff assaulted him by throwing a Styrofoam[2] bowl containing an unknown substance, which struck him in the middle of his back. (Kapnolas Dep. at 36, 38.) Based upon Kapnolas' report of this incident, on July 1, 1994, First Deputy Superintendent Melvin L. Hollins, not a named defendant, ordered plaintiff on to a restricted diet beginning from lunch on July 1, 1994 to

---

[1]Defendants state that the Amended Complaint erroneously refers to Ms. Delaney as "Delaney Steward."

[2]T r a d e m a r k   o f   T h e   D o w   C h e m i c a l   C o m p a n y .   *S e e* http://www.dow.com/styrofoam/na/about/regtm.htm (accessed May 17, 2005).  According to Dow's web site, Styrofoam is not used to make food service items.

supper on July 8, 1994. (McClellan Aff.  ¶4.) Kapnolas played no role in that determination. (Kapnolas Dep. at 52; Phelps Dep. at 43.) During the time he was on the restricted diet, plaintiff was seen by medical personnel at the facility who reported that "he appeared to have no acute medical problems." (J. McClellan letter to T.A. Coughlin, III (Jul. 8, 1994), Pl.'s Appendix at Ex. I.)

Plaintiff contends that he was placed on the restricted diet for fourteen days and suffered damages as a result. (Phelps Dep. at 43, 83; *but c.f.* Pre-Hearing Restricted Diet Order (Jul. 1, 1994), Pl.'s Appendix Ex. F (placing plaintiff on a restricted diet from July 1 to 8, 1994, a total of only seven days).) From July 1 until July 8, the facility medical staff documented that plaintiff lost eight pounds. (Phelps Dep. at 74.) Plaintiff claims he lost additional weight the next week, but does not quantify the amount, except to respond to questioning at his deposition to say that, "I was skinny." (*Id.*) In the complaint, plaintiff claims he lost thirty pounds. (Phelps Dep. at 77 (referring to Compl. ¶ 15), 83.) When confronted with the record of eight pounds lost, plaintiff responded, "[w]ell, in this record right here it says eight, but I think it was more than that." (*Id.*) Plaintiff claimed to "probably" have records to substantiate the claimed thirty-pound loss, (*id.*), but has not produced them for this motion.

Plaintiff also claims that he wrote letters complaining that the restricted diet food, referred to as "the loaf,"[3] was rotten, but did not recall to whom he wrote, or when, except

---

[3]     At Southport, the restricted diet consisted of three servings per day of a one-pound loaf of bread, made with whole wheat flour, powdered milk, whole milk, yeast, carrots and potatoes, and 8 ounces of uncooked cabbage. During days when the restricted diet was in place, an inmate would receive the loaf and cabbage for breakfast, lunch, and dinner. It was Southport's policy that inmates serving a restricted diet sentence would receive the restricted diet for a maximum of seven consecutive days, followed by at least seven

(continued...)

to relate that he "made Civil Service [sic] complaints to Albany, 114A [sic], at that particular time. That's what they were. I wrote letters to the Commissioner. I wrote letters to the Superintendent. I wrote letters to other organizations." (Phelps Dep. at 80, 83.) None of plaintiff's letters complaining about the food have been produced for this motion. When asked in particular about the restricted diet, plaintiff responded as follows:

> The three meals was [sic] rotten because they would let the bread sit in like these brown paper bags. And they would just pick it up, you know, and the bread would be moldy and rotten. Do you know what I'm saying? In other words, everybody would go home, right. And when they would go home it would be already there in the bag.

(Phelps Dep. at 70.) Plaintiff further testified that for fourteen days, "[t]he only food [he] ate was from [his] next door neighbor." (*Id*.)

Sergeant Cleveland was deposed with regard to complaints he received about the restricted diet. (Cleveland Dep. at 10-22.) He testified that most of the complaints from inmates "were just that they were not fully in agreement of [sic] being on the diet, number one. And that they just didn't like eating that for any period of time." (Cleveland Dep. at 10.) When asked if plaintiff complained, Cleveland testified that he could not recall any specific complaint from him, but that if plaintiff had complained about the meal, he "would have assessed his complaint and if [he] found there to be any merit to it [he] would have acted upon it." (*Id*. at 21.) He also testified that when he received complaints from other inmates, he looked at the restricted diet loaves and "didn't see anything wrong with the loaf and there

---

[3](...continued)
        days of regular diet.

*Rodriguez v. McGinnis*, No. 98-CV-6031CJS, 2004 WL 1145911, *3 (W.D.N.Y. May 18, 2004)

really wasn't anything I could do to make the loaf any more pleasant for them to eat." (*Id*. at 12.)

In addition to the weight loss, plaintiff claims he was mentally affected by the restricted diet. (Phelps Dep. at 78.) Plaintiff's deposition testimony is unclear as to whether the mental stress he suffered was as a result of being in solitary confinement, being on a restricted diet, or having used illegal drugs. (*Id*.) When asked if it was his testimony that "somewhere in the records a doctor said he is hearing voices because he was on a restricted diet…," plaintiff responded, "I won't say that." (*Id*. at 79-80.) Plaintiff did, however, admit to having used marijuana and "cocaine sometimes," but discounted drug use as contributing to his mental state. (*Id*. at 80.) He concluded that the restricted diet, "basically, it's a psychological thing that messes you up. Do you know what I mean?" (Phelps Dep. at 81.) When asked to clarify his statement, plaintiff referred to "mental distress." (*Id*. at 82.) When asked to clarify *that* statement, plaintiff responded, "[w]ell, you know." (*Id*.) He also claimed to have blacked out one time as a result of not eating, but did not relate his not eating to the nutritional value of the restricted diet. (*Id*.)

Between July 14, 1994 and July 18, 1994, Delaney conducted a disciplinary hearing with respect to the charges[4] filed by Kapnolas (Delaney Aff. ¶ 2). At the conclusion of the hearing, Delaney found plaintiff guilty of the charges and ordered him confined to the Special Housing Unit ("SHU") for sixty additional[5] days. (Delaney Aff. ¶ 3.) Delaney did not order that

---

[4]Plaintiff claimed "he was unjustly charged assault and commission of an unhygienic act on July 15, 1994." *Phelps v. Kapnolas*, 123 F.3d 91, 92 (2d Cir. 1997).

[5]Southport is an all-SHU facility. Plaintiff was already serving an SHU sentence at the time of the incident alleged by Kapnolas.

plaintiff be placed on a restricted diet. (Delaney Aff.  ¶ 4; Phelps Dep. at 54.) The proof

establishes, and the plaintiff concedes, that none of the other defendants ordered that he be

placed on a restricted diet. (Cleveland Dep. at 8; McClellan Aff.  ¶¶ 4, 5; McGinnis Aff.  ¶ 4;

Phelps Dep. at 54.)

### III. LEGAL STANDARDS

#### A.    Summary Judgment Standard

The law on summary judgment is well settled. Summary judgment may only be

granted if "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

That is, the burden is on the moving party to demonstrate that the evidence creates no

genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987)

(*en banc*). Where the non–moving party will bear the burden of proof at trial, the party

moving for summary judgment may meet its burden by showing the "evidentiary materials

of record, if reduced to admissible evidence, would be insufficient to carry the non–movant's

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 US 317, 327 (1986).

Once the moving party has met its initial obligation, the opposing party must produce

evidentiary proof in admissible form sufficient to raise a material question of fact to defeat

a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for

its failure to meet this requirement. *Duplantis v. Shell Off-Shore, Inc.*, 948 F.2d 187 (5th Cir.

1991); FED. R. CIV. P. 56(f). Once the moving party has met its burden, mere conclusions or

unsubstantiated allegations or assertions on the part of the opposing party are insufficient

to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9

(2d Cir. 1986).

The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non–moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### B.    Section 1983

The Civil Rights Act of 1871, codified in 42 U.S.C. § 1983, reads in pertinent part:

> Every person who, under color of any statute, ordinance, regula-
> tion, custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper proceeding for
> redress….

42 U.S.C. § 1983 (2005).This section does not create any constitutional rights. It merely provides a remedy for allegations of damages as a result of the violation of one's constitu-tional rights.

### C.    Eighth Amendment

Under the Eighth Amendment, States are prohibited from depriving prisoners of their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quote marks omitted). Further, prison officials may not "expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" *Id*. at 35.

> The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation…. In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference to inmate health or safety.

*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted). "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps*, 308 F.3d at 185 (internal quotations and citations omitted). An Eighth Amendment claim has two elements: "an objective element — that the prison officials' transgression was 'sufficiently serious' — and a subjective element — that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps* , 308 F.3d at 185 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation and internal quotation marks omitted in original).

> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Phelps*, 308 F.3d at 185-86 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff must show that "the food served to inmates is nutritionally inadequate, and that it is served under conditions that present an immediate danger to the health and well-being of those inmates." *Leach v. Dufrain*, 103 F. Supp. 2d 542, 547 (N.D.N.Y. 2000) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (per curiam)).

### D.    Personal Involvement of Defendants

"It is well settled in [the Second Circuit] that 'personal involvement in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Personal involvement of a defendant may be shown by evidence that the defendant: (1) participated directly in the alleged constitutional violation, (2) after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.1986).

### E.    Qualified Immunity

Defendants have raised the defense of qualified immunity. Prison officials are immune from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000). Even in cases where the rights are clearly established, "qualified immunity . . . protects a government official 'if it was objectively reasonable for [the official] to believe that his acts did not violate those rights.'" *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990) (quoting *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)). Qualified immunity is an affirmative defense. Consequently, defendants bear the burden of showing "that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti*, 123 F.3d 75,

78 (2d Cir. 1997) (citation omitted); *see also Tellier*, 280 F.3d at 84. "Whether an official is entitled to summary judgment based on qualified immunity for acts taken within the scope of his discretion depends on the objective legal reasonableness of his actions in light of (1) clearly established law and (2) the facts possessed by the official at the time." *Bass v. Coughlin*, 800 F. Supp. 1066, 1070 (N.D.N.Y. 1991).

### III. ANALYSIS

Defendants contend that, "plaintiff was actually placed on the restricted diet by First Deputy Superintendent M.L. Hollins, who is not named as a defendant. Thus, they maintain that there is no proof that any of the defendants were directly involved in the alleged constitutional deprivation." (Defs.' Mem. of Law at 5.) Further, in their reply papers, defendants assert that according to plaintiff, he refused to eat the restricted diet, "because, allegedly, the food had been allowed to 'sit around' in paper bags and had become 'moldy and rotten.' (Deposition of Darryl Phelps, p.70)." They then argue, "[t]hus, assuming that the plaintiff lost weight and suffered the other damages he claims, this was not due to any inherent nutritional deficiencies in the restricted diet, but, rather, his refusal to eat it at all based upon its allegedly 'moldy' condition." (Defs.' Reply Mem. at 2.) Plaintiff, on the other hand, maintains that "each defendant met one or more of the *Colon v. Coughlin* elements and therefore each defendant was personally involved in the violation of his Eighth Amendment rights." (Pl.'s Mem. of Law at 5.)

#### A.    Kapnolas

Turning first to Kapnolas, plaintiff argues that because he had previously complained about Kapnolas' illegal searches of his cell, Kapnolas had a motive to force plaintiff on to a restricted diet and that Kapnolas knew the misbehavior report he wrote would result in

disciplinary action. On the other hand, Kapnolas states in an affidavit that he did not know for sure plaintiff would be placed on a restricted diet as a result of the misbehavior report. He additionally argues that even if he did know plaintiff's diet would be restricted, he was entitled to "rely on the explicit policy of the Department of Correctional Services which mandates that the restricted diet 'must consist of a sufficient quantity of wholesome and nutritious food.'" (Kapnolas Aff. ¶¶ 4, 5 (quoting 7 N.Y.C.R.R. §304.2(e).) Moreover, Kapnolas points out that, since plaintiff was removed from Kapnolas' block at Southport, absent a specific complaint, he could not have known that plaintiff's restricted diet was so deficient as to violate his Eighth Amendment rights.

Kapnolas has established his basis for summary judgment by showing that the evidentiary proof would be insufficient to carry plaintiff's burden of proof at trial. The Court agrees with defendants' argument that even if Kapnolas knew plaintiff would be placed on a restricted diet, there is no proof that Kapnolas knew the diet was so insufficient as to amount to a constitutional violation. Nevertheless, assuming for the sake of argument that serving the allegedly moldy loaf was a sufficiently serious transgression of plaintiff's Eighth Amendment rights, there is no proof of the subjective element of an Eighth Amendment claim—that Kapnolas knew of and disregarded an excessive risk to inmate health or safety. The evidence before the Court on this motion shows clearly that although plaintiff may be able to meet the requirement to prove the objective element of an Eighth Amendment violation, he will be unable to prove either that Kapnolas was personally involved, or the subjective element—that Kapnolas acted, or omitted to act, with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference to inmate health or safety. *See Phelps,* 308 F.3d at 185. Unlike the situation the Court addressed in *Rodriguez*, No. 98-CV-6031CJS, 2004 WL

1145911, the record in this matter contains no proof that Kapnolas deliberately denied plaintiff adequate food or deliberately failed to address serious medical concerns.

Moreover, plaintiff admitted at his deposition that Kapnolas had nothing to do with his being placed on a restricted diet. When plaintiff was asked, "[s]o, the other people, Kapnolas, Steward Delaney, McClellan, Cleveland, McGinnis, had nothing to do with your being put on the restricted diet. Just Holland and possibly Williams; is that true?", he responded, "[y]es." (Phelps Dep. at 54.) Plaintiff, therefore, will be unable to prove that Kapnolas was personally involved in having him placed on a restricted diet. The evidence before the Court on this motion shows that Kapnolas did not know that plaintiff was placed on the restricted diet, and was not aware of any nutritional deficiency plaintiff suffered as a result.

The Court also determines that Kapnolas is entitled to qualified immunity on the basis that he is permitted to rely on the DOCS directive requiring that inmates be given a sufficient quantity of wholesome and nutritious food. Absent any proof that Kapnolas knew plaintiff was receiving less than nutritious or wholesome food, there is no basis for concluding that Kapnolas acted in an objectively unreasonable manner in light of clearly established law and the facts he possessed at the time. The Court's research has not revealed any case in which the DOCS restricted diet, known as "the loaf," has been found nutritionally deficient, nor has plaintiff submitted any cases on that point.[6]

### B.   Delaney

Turning next to Delaney, the facility steward, the Court concludes, from the

---

[6]Plaintiff has referred the Court to *Cunningham v. Jones*, 667 F.2d 565 (6th Cir. 1982). That case, however, is distinguishable. There, the Circuit Court held that the district court improperly dismissed the complaint after determining that the plaintiff was receiving only *one* meal per day, without ascertaining the caloric content of that one meal and whether it was sufficient. In the case before this Court, however, there is no dispute that plaintiff received three meals per day.

evidentiary proof in admissible form, that she is also entitled to summary judgment. Delaney was the hearing officer for Kapnolas' misbehavior report. (Delaney Aff. ¶ 2.) Plaintiff argues there is a question of fact with regard to whether Delaney knew, prior to the hearing, that plaintiff had been placed on a restricted diet. (Delaney Dep. at 8-9.) Assuming for the sake of this motion that she *was* aware of the restricted diet order, the Court nevertheless determines that such awareness in and of itself is insufficient to warrant liability for a constitutional violation. Plaintiff has not submitted any evidentiary proof in admissible form to show that Delaney knew of and disregarded an excessive risk to plaintiff's health or safety, or that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that she drew that inference.

Furthermore, as pointed out above, DOCS regulations required the restricted diet to consist of sufficient wholesome and nutritional food. Even if Delaney knew, prior to the hearing, that plaintiff was on a restricted diet, in the absence of proof that she knew the diet was insufficient or unwholesome, Delaney was entitled to rely on DOCS regulations. Consequently, she is also entitled to qualified immunity. *See U.S. v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Stephens v. Ward*, 63 A.D.2d 798, 799 (N.Y. App. Div. 1978) ("There is a presumption that public officials will discharge their duties in a fair and honest manner and in accordance with reason (*Kane v. Walsh*, 295 N.Y. 198, 206)."). Finally, the sentence Delaney imposed on plaintiff did not include any restrictions pertaining to his diet.

### C.     McClellan and McGinnis

With regard to Superintendent McClellan and Deputy Superintendent McGinnis, plaintiff has testified at his deposition that he made the superintendent aware of problems with the food. (Phelps Dep. at 83 ("I wrote letters to the Superintendent.")). Earlier in his deposition, though, he had been asked, "[w]ho did you write to or complaint to about the loaf being rotten," and responded, "I think the Superintendent. Either the Commissioner — I made out a whole lot of letters to different places, to my recollection. They have to be found." (*Id*. at 80-81.) Nonetheless, for purposes of this motion, the Court will assume that Superintendent McGinnis had some knowledge of a problem with the food served to plaintiff. However, plaintiff's proof still fails to show that he can meet the subjective test under the Eighth Amendment with respect to his claim against McGinnis — that McGinnis acted, or failed to act, with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference toward inmate health or safety. Plaintiff's testimony does not reveal the contents of the letter he thinks he wrote to McGinnis. Thus, the evidentiary proof in admissible form fails to establish that McGinnis was put on notice of the constitutional nature of the complaint, or that the food being served to plaintiff on the restricted diet was causing him to receive inadequate nutrition. Additionally, assuming for the sake of this motion that McGinnis was aware plaintiff was on a restricted diet, McGinnis is entitled to qualified immunity for the same reasons described above with regard to Kapnolas and Delaney.

Finally, with regard to McClellan, plaintiff has produced no evidence of his involvement in the decision to place plaintiff on a restricted diet, or proof that he even knew plaintiff was placed on a restricted diet. Nevertheless, since McClellan was involved in security, the Court will, for the sake of this motion, presume McClellan was

at least aware of the pre-hearing restricted diet order. However, as with McGinnis, plaintiff has produced no proof in evidentiary form that McClellan had any personal involvement in plaintiff's restricted diet; or that he knew of a constitutional violation and failed to remedy it; or that he created a policy or custom under which unconstitutional practices occurred; or that he allowed the continuance of such a policy or custom; or that he was grossly negligent in supervising subordinates who committed the wrongful acts; or that he exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Furthermore, the Court determines that McClellan, for the same reasons discussed with respect to his codefendants, is entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion (# 116) for summary judgment is granted with respect to all defendants, and the case is dismissed.

IT IS SO ORDERED.

Dated:   May 31, 2005
         Rochester, New York

ENTER:


/s/ Charles J. Siragusa
Charles J. Siragusa
United States District Judge