**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

DARRYL A. PHELPS,

                                        Plaintiff,

                -vs-                           DECISION & ORDER
                                                               94-CV-7543-CJS

N. KAPNOLAS, *et al*,

                                        Defendants

---

**Siragusa, J.** This is a closed action originally brought pursuant to 42 U.S.C. § 1983, by Plaintiff, now proceeding *pro se*. In its Decision and Order entered on July 22, 2010, the Court extensively discussed Plaintiff's abusive filings and directed him to,

> show cause not later than August 15, 2010, by submitting an affidavit in writing to the Court stating why he should not be sanctioned for disobeying the Court's Letter Order directing him not to file any further motions in this matter; and it is further
>
> ORDERED, that if Plaintiff fails to respond, the Court will impose sanctions on Plaintiff; and it is further
>
> ORDERED, that no further post-judgment motions be filed in this case, other than at the direction of the Court.

(Decision and Order, *Phelps v. Kapnolas*, 94-CV-7543 (Jul. 22, 2010), at 6–7.) Since Plaintiff failed to "show cause" by August 15, 2010, the Court now determines whether Plaintiff is, in fact, subject to civil contempt sanctions. The Court will begin its analysis by setting forth the prior history in detail here from starting with the Court's 2005 Decision and Order..

## BACKGROUND

*Prior Procedural History*

Plaintiff commenced this action in July 1994 asserting, pursuant to 42 U.S.C. § 1983, entitlement to a declaratory judgment and monetary relief for acts of the defendants which he claimed violated his rights under the Fourth, Eighth and Fourteenth Amendments. In a Decision and Order entered on December 22, 1994, by the Honorable Richard J. Arcara, U.S. District Judge, the Court dismissed the complaint as to all the defendants except Kapnolas and all causes of action, except plaintiff's Eighth Amendment claim against Kapnolas. Decision and Order, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS (W.D.N.Y. Dec. 22, 1994). That remaining cause of action was subsequently dismissed based upon defendant's motion for summary judgment. Decision and Order, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS (W.D.N.Y. Jan. 29, 1996). However, plaintiff appealed to the United States Court of Appeals for the Second Circuit, raising the sole issue of whether the allegation that he was placed on a diet consisting only of bread for seven days would support a claim that defendants violated his rights under the Eighth Amendment. Plaintiff prevailed, and the Court of Appeals reversed as to all defendants on that single claim, and remanded for discovery proceedings. *Phelps v. Kapnolas*, 123 F.3d 91, 93 (2d Cir. 1997).

Plaintiff then filed an amended complaint (# 47), which the Court dismissed, adopting the report and recommendation of U.S. Magistrate Judge Leslie G. Fochio, that

defendants' motion (# 49) for summary judgment be granted. Order Adopting Report and Recommendation, *Phelps v. Kapnolas*, No. 94-CV-7543-CJS (W.D.N.Y. Dec. 8, 2000). Plaintiff appealed that dismissal, and the Court of Appeals again reversed, reinstated the amended complaint, and remanded the case to the Court for further discovery. *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002). Following the completion of discovery, defendants filed another motion (# 116) for summary judgment. Plaintiff's *pro bono* counsel filed responsive papers and the Court heard oral argument on the summary judgment application on February 17, 2005.

*Factual Background*

Viewing the evidence in the light most favorable to plaintiff and drawing every inference in his favor, the Court accepted the following facts for the purposes of the motion. Plaintiff was an inmate at the Southport Correctional Facility ("Southport"), which is operated by the New York State Department of Correctional Services ("DOCS") (Amended Complaint, ¶ 3). Defendants were employed by DOCS in the following capacities at the times of the incidents alleged in the amended complaint: (1) Nick Kapnolas as a Correction Officer (Kapnolas Dep. at 10); JoAnn Delaney[1] as Institutional Steward (Delaney Aff. ¶ 11); Robert McClellan as Superintendent (McClellan Aff. ¶ 1); Terry Cleveland as a Correction Sergeant (Cleveland Dep. at 5); and Michael McGinnis as Deputy Superintendent of Security (McGinnis Aff. ¶ 1).

---

[1] Defendants state that the Amended Complaint erroneously refers to Ms. Delaney as "Delaney Steward."

On July 1, 1994, Kapnolas filed an Inmate Misbehavior Report alleging that Plaintiff assaulted him by throwing a Styrofoam[2] bowl containing an unknown substance, which struck him in the middle of his back. (Kapnolas Dep. at 36, 38.) Based upon Kapnolas' report of this incident, on July 1, 1994, First Deputy Superintendent Melvin L. Hollins, not a named defendant, ordered Plaintiff on to a restricted diet beginning from lunch on July 1, 1994 to supper on July 8, 1994. (McClellan Aff. ¶4.) Kapnolas played no role in that determination. (Kapnolas Dep. at 52; Phelps Dep. at 43.) During the time he was on the restricted diet, Plaintiff was seen by medical personnel at the facility who reported that "he appeared to have no acute medical problems." (J. McClellan letter to T.A. Coughlin, III (Jul. 8, 1994), Pl.'s Appendix at Ex. I.)

Plaintiff contended that he was placed on the restricted diet for fourteen days and suffered damages as a result. (Phelps Dep. at 43, 83; *but c.f.* Pre-Hearing Restricted Diet Order (Jul. 1, 1994), Pl.'s Appendix Ex. F (placing plaintiff on a restricted diet from July 1 to 8, 1994, a total of only seven days).) From July 1 until July 8, the facility medical staff documented that plaintiff lost eight pounds. (Phelps Dep. at 74.) Plaintiff claimed he lost additional weight the next week, but did not quantify the amount, except to respond to questioning at his deposition to say that, "I was skinny." (*Id.*) In his amended complaint, Plaintiff claimed he lost thirty pounds. (Phelps Dep. at 77 (referring to Compl. ¶ 15), 83.) When confronted with the record of eight pounds lost, Plaintiff responded, "[w]ell, in this record right here it says eight, but I think it was more than

---

[2]Trademark of The Dow Chemical Company. *See* http://www.dow.com/styrofoam/na/about/regtm.htm (accessed May 17, 2005). According to Dow's web site, Styrofoam is not used to make food service items.

that." (*Id*.) Plaintiff claimed to "probably" have records to substantiate the claimed thirty-pound loss, (*id*.), but did not produce them for the motion.

Plaintiff also claimed that he wrote letters complaining that the restricted diet food, referred to as "the loaf,"[3] was rotten, but did not recall to whom he wrote, or when, except to relate that he "made Civil Service [sic] complaints to Albany, 114A [sic], at that particular time. That's what they were. I wrote letters to the Commissioner. I wrote letters to the Superintendent. I wrote letters to other organizations." (Phelps Dep. at 80, 83.) None of plaintiff's letters complaining about the food were produced for this motion. When asked in particular about the restricted diet, Plaintiff responded as follows:

> The three meals was [sic] rotten because they would let the bread sit in like these brown paper bags. And they would just pick it up, you know, and the bread would be moldy and rotten. Do you know what I'm saying? In other words, everybody would go home, right. And when they would go home it would be already there in the bag.

(Phelps Dep. at 70.) Plaintiff further testified that for fourteen days, "[t]he only food [he] ate was from [his] next door neighbor." (*Id*.)

Sergeant Cleveland was deposed with regard to complaints he received about the restricted diet. (Cleveland Dep. at 10-22.) He testified that most of the complaints

---

[3] At Southport, the restricted diet consisted of three servings per day of a one-pound loaf of bread, made with whole wheat flour, powdered milk, whole milk, yeast, carrots and potatoes, and 8 ounces of uncooked cabbage. During days when the restricted diet was in place, an inmate would receive the loaf and cabbage for breakfast, lunch, and dinner. It was Southport's policy that inmates serving a restricted diet sentence would receive the restricted diet for a maximum of seven consecutive days, followed by at least seven days of regular diet.

*Rodriguez v. McGinnis*, No. 98-CV-6031CJS, 2004 WL 1145911, *3 (W.D.N.Y. May 18, 2004)

from inmates "were just that they were not fully in agreement of [sic] being on the diet, number one. And that they just didn't like eating that for any period of time." (Cleveland Dep. at 10.) When asked if Plaintiff complained, Cleveland testified that he could not recall any specific complaint from him, but that if Plaintiff had complained about the meal, he "would have assessed his complaint and if [he] found there to be any merit to it [he] would have acted upon it." (*Id*. at 21.) He also testified that when he received complaints from other inmates, he looked at the restricted diet loaves and "didn't see anything wrong with the loaf and there really wasn't anything I could do to make the loaf any more pleasant for them to eat." (*Id*. at 12.)

In addition to the weight loss, Plaintiff claims he was mentally affected by the restricted diet. (Phelps Dep. at 78.) Plaintiff's deposition testimony is unclear as to whether the mental stress he suffered was as a result of being in solitary confinement, being on a restricted diet, or having used illegal drugs. (*Id*.) When asked if it was his testimony that "somewhere in the records a doctor said he is hearing voices because he was on a restricted diet…," plaintiff responded, "I won't say that." (*Id*. at 79-80.) Plaintiff did, however, admit to having used marijuana and "cocaine sometimes," but discounted drug use as contributing to his mental state. (*Id*. at 80.) He concluded that the restricted diet, "basically, it's a psychological thing that messes you up. Do you know what I mean?" (Phelps Dep. at 81.) When asked to clarify his statement, Plaintiff referred to "mental distress." (*Id*. at 82.) When asked to clarify *that* statement, Plaintiff responded, "[w]ell, you know." (*Id*.) He also claimed to have blacked out one time as a

result of not eating, but did not relate his not eating to the nutritional value of the restricted diet. (*Id.*)

Between July 14, 1994 and July 18, 1994, Delaney conducted a disciplinary hearing with respect to the charges[4] filed by Kapnolas (Delaney Aff. ¶ 2). At the conclusion of the hearing, Delaney found Plaintiff guilty of the charges and ordered him confined to the Special Housing Unit ("SHU") for sixty additional[5] days. (Delaney Aff. ¶ 3.) Delaney did not order that Plaintiff be placed on a restricted diet. (Delaney Aff. ¶ 4; Phelps Dep. at 54.) The proof established, and Plaintiff conceded, that none of the other defendants ordered that he be placed on a restricted diet. (Cleveland Dep. at 8; McClellan Aff. ¶¶ 4, 5; McGinnis Aff. ¶ 4; Phelps Dep. at 54.)

After setting forth the legal standards applicable to the then-pending motion, the Court determined that on the evidence before it, Defendant Kapnolas did not know that Plaintiff was placed on the restricted diet, and was not aware of any nutritional deficiency Plaintiff suffered as a result. Additionally, the Court determined that Kapnolas was entitled to qualified immunity, writing that its research had not revealed any case in which the DOCS restricted diet, known as "the loaf," has been found nutritionally deficient, nor had Plaintiff submitted any cases on that point.[6]

---

[4] Plaintiff claimed "he was unjustly charged assault and commission of an unhygienic act on July 15, 1994." *Phelps v. Kapnolas*, 123 F.3d 91, 92 (2d Cir. 1997).

[5] Southport is an all-SHU facility. Plaintiff was already serving an SHU sentence at the time of the incident alleged by Kapnolas.

[6] Plaintiff has referred the Court to *Cunningham v. Jones*, 667 F.2d 565 (6th Cir. 1982). That case, however, is distinguishable. There, the Circuit Court held that the district court improperly dismissed the complaint after determining that the plaintiff was receiving only *one* meal
(continued...)

With regard to Defendant Delaney, the facility steward, who was the hearing officer for Kapnolas' misbehavior report, the Court, assuming for the sake of the motion that she *was* aware of the restricted diet order, determined that such awareness was, in and of itself, insufficient to warrant liability for a constitutional violation. The Court wrote that Plaintiff had not submitted any evidentiary proof in admissible form to show that Delaney knew of and disregarded an excessive risk to his health or safety, or that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that she drew that inference. Furthermore, as pointed out above, DOCS regulations required the restricted diet to consist of sufficient wholesome and nutritional food. Thus, even if Delaney knew, prior to the hearing, that Plaintiff was on a restricted diet, in the absence of proof that she knew the diet was insufficient or unwholesome, the Court concluded that she was entitled to rely on DOCS regulations and, consequently, was also entitled to qualified immunity. *See U.S. v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Stephens v. Ward*, 63 A.D.2d 798, 799 (N.Y. App. Div. 1978) ("There is a presumption that public officials will discharge their duties in a fair and honest manner and in accordance with reason (*Kane v. Walsh*, 295 N.Y. 198, 206).")."). Further, the Court noted that the

---

⁶(...continued)
per day, without ascertaining the caloric content of that one meal and whether it was sufficient. In the case before this Court, however, there is no dispute that plaintiff received three meals per day.

sentence Delaney imposed on Plaintiff did not include any restrictions pertaining to his diet.

With regard to Defendant McGinnis, the Court assumed, for the motion, that McGinnis had some knowledge of a problem with the food served to Plaintiff, but determined that Plaintiff's proof failed to show that he could meet the subjective test under the Eighth Amendment with respect to his claim against McGinnis. The Court also determined that McGinnis was entitled to qualified immunity for the same reasons described above with regard to Kapnolas and Delaney. Finally, with regard to Defendant McClellan, the Court found that Plaintiff had produced no evidence of his involvement in the decision to place Plaintiff on a restricted diet, or proof that McClellan even knew Plaintiff was placed on a restricted diet. Although, the Court assumed that McClellan was at least aware of the pre-hearing restricted diet order, it determined that, Plaintiff had produced no proof in evidentiary form that McClellan had any personal involvement in Plaintiff's restricted diet; or that he knew of a constitutional violation and failed to remedy it; or that he created a policy or custom under which unconstitutional practices occurred; or that he allowed the continuance of such a policy or custom; or that he was grossly negligent in supervising subordinates who committed the wrongful acts; or that he exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Furthermore, the Court determined that McClellan, for the same reasons discussed with respect to his codefendants, was entitled to qualified immunity.

*Post-Judgment Procedural History*

The Court directed the Clerk to enter judgment for Defendants which was entered on June 7, 2005. On June 9, 2005, Plaintiff filed a Notice of Appeal, and on August 16, 2005, the Second Circuit dismissed the appeal for failure to file a Prisoner Authorization form within thirty days. *Phelps v. Kapnolas*, No. 05-2974-pr (2d Cir. Aug. 16, 2005). On June 27, 2005, Plaintiff had filed a motion for partial summary judgment, and the Court denied the motion as moot in a Decision and Order docketed on September 2, 2005. On October 11, 2005, the Second Circuit issued an Order stating, "The Court noting that an order prisoner authorization having been entered in error on 8/16/05. IT IS HEREBY ORDERED that the said order be and it hereby is vacated."

On February 21, 2006, the Clerk of the district court docketed an Order of the Second Circuit, issued on August 16, 2005, stating:

> NOTICE HAVING BEEN GIVEN that the appellant was required to file a Prisoner Authorization form, properly signed and without alteration, and APPELLANT HAVING FAILED to file said Prisoner Authorization form within the THIRTY DAYS prescribed,, THIS APPEAL IS HEREBY DISMISSED. Any motions pending prior to the entry of this order of dismissal are deemed MOOT.

*Phelps v. Kapnolas*, No. 05-2974-pr (2d Cir. Aug. 16, 2005). On June 11, 2009, three years, nine months and twenty-six days following the Second Circuit's dismissal of his appeal, Plaintiff filed in this Court a motion for reconsideration of this Court's prior Decision and Order granting summary judgment to Defendants and finding his own post-judgment motion for summary judgment moot. In reality, however, the motion made was actually an offer of judgment under Federal Rule of Civil Procedure 68. After directing

Plaintiff to file proof of service, the Court, in an October 7, 2009, Decision and Order, denied Plaintiff's post-judgment, post-appeal motion on the ground that he had failed to provide proof of service of the motion on Defendants. Further, the Court also determined that if it had addressed the Rule 68 application, it would have denied it on the merits.

On October 7, 2009, the Court entered a Letter Order stating:

> I am in receipt of your letter and motions under Federal Rules of Civil Procedure 54(d) and (e), 60(b), and 68 dated August 30 and 31, 2009. Please note that since Judgment was entered for the defendants on June 7, 2005, and your appeal was dismissed by the U.S. Court of Appeals for the Second Circuit in a mandate filed on August 19, 2005, this Court no longer has jurisdiction to entertain motions on this case of the type you sent. Accordingly, your documents are being returned to you with this letter.
>
> You have also sent a motion for a stay under Rule 62. Your motion, however, does not allege that the defendants are presently engaged in enforcing their judgment. Moreover, the judgment only dismissed the complaint against them, and did not award money damages or injunctive relief to them. Further, the docket does not show that they have asked the Clerk to bill costs to you under 28 U.S.C. § 1920. Therefore, even if a motion under Rule 62 were filed, there would be nothing to stay.
>
> Finally, you have also sent a motion to amend the judgment pursuant to Rule 59. As your motion paper states, however, the rule sets a ten-day limit on filing as measured from the date of entry of judgment, which in your case was over four years ago. Furthermore, as is the case with your Rule 62 application, your Rule 59 motion is nothing more than a recitation of the statutory language.
>
> I direct you not to file any further inappropriate motions in the above-referenced action. If you do so, I will consider imposing sanctions against you.
>
> SO ORDERED.

(Letter Order, *Phelps v. Kapnolas*, 94-CV-7543 (W.D.N.Y. Oct. 6, 2009).) On July 22, 2010, the Court, in response to Plaintiff's September 4, 2009, motion pursuant to 28 U.S.C. § 1920, the Court wrote:

> This is a closed case, originally brought by Plaintiff pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's motion (Docket No. 140) which he appears to label as one seeking either costs pursuant to 28 U.S.C. § 1920, a judgment pursuant to Federal Rule of Civil Procedure 54(d), or in forma pauperis status pursuant to 28 U.S.C. § 1915. In actuality, however, the Court determines that the motion seeks reconsideration of the Court's prior reconsideration of its prior Decision and Order granting Defendants summary judgment. For the reasons stated below, Plaintiff's motion is denied and the Court orders Plaintiff to show cause why he should not be sanctioned.

(Decision and Order, *Phelps v. Kapnolas*, 94-CV-7543 (W.D.N.Y. Jul. 22, 2010).)

On August 3, 2010, the Court received correspondence from Plaintiff, which it attaches to this Decision and Order in its entirety. Not only is Plaintiff's letter unresponsive to the Court's Order, it is absurd.

## STANDARD OF LAW

The objective of civil contempt sanctions is to serve either or both of two purposes: (1) to coerce the contemnor into future compliance with the court's order, or (2) to compensate the complainant for losses resulting from the contemnor's past non-compliance. *United States of America v. United Mine Workers*, 330 U.S. 258, 303-04 (1947); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352-53 (2d Cir. 1989). As the Second Circuit recently observed:

> "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

*Utica College v. Gordon*, Nos. 09-4451-cv (L), 09-4759-cv (xap), 2010 U.S. App. LEXIS 16830 (2d Cir. Aug. 11, 2010).

**ANALYSIS**

The Court issued two orders to Plaintiff post-judgment: (1) not to file any further inappropriate motions in the above-referenced action; and (2) to show cause not later than August 15, 2010, by submitting an affidavit in writing to the Court stating why he should not be sanctioned for disobeying the Court's Letter Order directing him not to file any further motions in this matter. Inasmuch as Plaintiff is now proceeding *pro se*, the Court determines that its two orders may have caused him some confusion. Accordingly, the Court determines that its orders were not unambiguous, since one directed Plaintiff not to file any "inappropriate" motions, and gave not definition of "inappropriate" to the *pro se* litigant. Accordingly, the Court determines that it cannot find Plaintiff in contempt.

Nevertheless, the Court shall issue a separate, clear and unambiguous order directing Plaintiff not to file any more papers whatsoever with regard to this case, *Phelps v. Kapnolis*, 94-CV-7543, without first seeking permission from the Court. *See, e.g., Bascom v. Brookdale Hosp.*, No. 10-CV-3378 (ARR) (LB), 2010 U.S. Dist. LEXIS 78572 (E.D.N.Y. Aug. 3, 2010) (barring *pro se* plaintiff from filing further vexatious complaints without leave of the court).

**CONCLUSION**

The Court does not find Plaintiff in contempt, but concludes that Plaintiff must seek leave before filing any further papers in this case. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge*

*v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

Dated: September 8, 2010
        Rochester, New York

                ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge